UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| THOMAS GRIFFIE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 09-12-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MICHAEL J. ASTRUE, | ) | **AND ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Thomas Griffie ("Griffie") brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security ("Commissioner") denying Griffie's application for disability insurance benefits ("DIB"). Griffie's complaint alleges that the Commissioner's decision was not based on substantial evidence. R. 2 at ¶ 8. In his motion for summary judgment, Griffie argues that the ALJ erred in the following two ways: (1) by failing to give greater weight to the opinion of his treating physician, Dr. Ricky Collins, and (2) by not considering his impairments together to determine their cumulative effect. R. 12 at 3. Griffie's claims are without merit, and thus, the Court grants the Defendant's Motion for Summary Judgment, R. 13, for the reasons provided below.

I. BACKGROUND

Plaintiff, who is 51 years old, alleges an inability to work beginning on September 23, 2004, after a student jumped on his back while he was substitute teaching. R. 12 at 2; Transcript ("Tr.") at 21. Griffie has past work experience as a call-center manager, auto-glass technician,

and manager and owner of a gas station. Tr. at 864-866. At the hearing, Griffie testified that he has trouble "sitting, standing, walking, [and] bending over," *id.* at 867, and could only walk for 250 feet without taking a break, *id.* at 873. He also testified that he could stand for only ten minutes without sitting down, *id.*, and that lifting a gallon of milk hurt his arm, *id.* at 874.

Griffie filed an application for DIB on February 23, 2005.[1] *Id.* at 50-52. Administrative Law Judge ("ALJ") Don C. Paris held a hearing on May 11, 2007, *id.* at 855-891, and denied the application on June 11, 2007, *id.* at 25. The Appeals Council denied Griffie's request for review on December 15, 2008, *id.* at 5, at which point the ALJ's decision became the final decision of the Commissioner. Griffie filed the action in this Court on January 23, 2009. *See* R. 2. The parties have filed cross motions for summary judgment. *See* R. 12; R. 13.

## II. THE ALJ'S DECISION

In evaluating a claim of disability, the ALJ conducts a five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920; s*ee also* Tr. at 14-25, ALJ Op. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). The ALJ determined that Griffie had not engaged in substantial gainful activity since the date of his injury, September 23, 2004. Tr. at 16.

Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have

---

[1] Griffie filed an application for DIB on July 8, 1997. Tr. at 14. Griffie received a closed period of DIB from January 22, 1997 to July 16, 1998. *Id.* Griffie filed a second application for DIB on October 18, 1999, that was denied initially and on reconsideration. *Id.* He filed a third application for DIB on October 17, 2001, that was dismissed upon request for withdrawal of request for a hearing. *Id.*

2

a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). The ALJ determined that Griffie had the following "severe" impairments: obesity and degenerative disc disease of the lumbar spine. Tr. at 17. Griffie had back surgery in 1997, and an October 25, 2004, magnetic resonance image showed "small central disc protrusion at L3-L4." *Id.* The ALJ also acknowledged Griffie had the following "non-severe" impairments: gastro-esophageal reflux disease, diabetes mellitus, thyroid problem, hypertension, history of umbilical hernia repair, hypercholesterolemia, Bell's palsy, status post fracture of left proximial tibia internal fixation, status post left knee arthroscopy, colitis, and major pain and depressive disorder. *Id.* However, the ALJ did not find any "significant limitations" caused by these non-severe limitations because Griffie either recovered from the impairments or they were controlled by medication. *Id.* The ALJ also noted that Griffie had a successful surgery for colitis and that the arthritis in his hands and arms was not severe. *Id*. at 18. Further, Griffie admitted at the hearing that his problems were physical, not mental. *Id*. Considering all these factors, the ALJ determined that Griffie's "extensive history of back pain . . . may affect his physical ability to do some things." *Id.* However, the ALJ also noted that Griffie's daily activites were only "mildly affected" by his pain. *Id.*

Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). The ALJ found that "[a]lthough the claimant is obese and has degenerative disc disease of the lumbar spine, there is no evidence of any musculoskeletal impairment of a severity to meet or equal the requirements of any subsection of Section 1.00 of Appendix 1." Tr. at 19. Thus, Griffie was not disabled

under this analysis. Before going to step four, the ALJ determined that Griffie "has the residual functional capacity to perform a reduced range of light work activity." *Id.* at 20. The ALJ found that Griffie could occasionally lift and carry fifteen pounds and ten pounds more frequently, and he could stand, sit, or walk for six hours, but he must have a sit/stand option. *Id.* The ALJ also determined that Griffie should not operate dangerous machinery and should be limited with respect to climbing, exposure to vibration and heights. *Id.*

Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). The vocational expert testified at the hearing that Griffie was able to do his past relevant work as a team leader at a call center and as a substitute teacher. Tr. at 23, 887. Thus, the ALJ determined that Griffie was capable of performing past relevant work. *Id.* at 23.

Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(g). The vocational expert testified that even if Griffie could not return to his past relevant work, he was capable of making a vocational adjustment to other work at the light exertional level. Tr. at 24. This includes jobs such as a cashier or store clerk. *Id.* Because Griffie could do other work, the ALJ found that he was not disabled. *Id.*

4

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's decision is restricted "to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(g); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). Substantial evidence means "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (quotations and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk*, 667 F.2d at 536). If substantial evidence supports the Commissioner's decision, this Court must affirm that decision even if there is substantial evidence in the record that supports an opposite conclusion. *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)). Further, when reviewing the Commissioner's decision, the Court cannot "try the case de novo, resolve conflicts in the evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)).

The Court has no obligation to search the record to develop and support the arguments of the parties. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir.

2006). Rather, the Court's review is limited to the specific issues the parties raise. *Id.*

## IV. DISCUSSION

Griffie argues that the ALJ erred in two ways: (1) the ALJ failed to give greater weight to the opinion of his treating physician, Dr. Collins, and (2) the ALJ did not consider each of his impairments together to determine their cumulative effect. R. 12 at 3. His arguments lack merit.

### 1. Consideration of the Opinion of the Treating Physician, Dr. Ricky Collins

The ALJ rejected the opinion of Dr. Collins. Tr. at 22. Griffie alleges that the ALJ erred and should have given "greater weight" to Dr. Collins's opinion. R. 12 at 3. He is wrong. Further, Griffie's motion fails to cite to any part of the lengthy record to fully develop his argument. *See Hollon*, 447 F.3d at 491.

In an August 7, 2006, letter, Dr. Collins stated that Griffie had a "total disability from his degenerative joint disease and also his non-insulin-dependent diabetes mellitus." Tr. at 442. Griffie also states in his motion that the "Vocational Expert testified Plaintiff would be unable to return to his past relevant work or any other work based upon the report of Dr. Collins." R. 12 at 2-3. Dr. Collins's physical capabilities evaluation concluded that Griffie could: sit, stand, and walk for two hours a day; occasionally lift and carry up to ten pounds; use his hands for simple grasping but not for pushing and pulling; never crawl, occasionally bend, squat, climb and reach above shoulder level; never be around machinery or exposed to heights and changes in temperature and humidity; and drive and be exposed to dust and fumes only in moderation. Tr. at 443.

The Social Security Regulations provide a framework for the evaluation of a treating

6

physician's opinion. The applicable Regulation provides:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2). The factors considered include: the length, frequency, nature, and extent of the treatment relationship; the evidence supporting the opinion; the consistency of the opinion with the records as a whole; the specialization of the doctor; and other relevant factors. *Id.* at (d)(2)-(d)(6); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Thus, although the opinion of a treating source is not necessarily binding, an ALJ must set forth some basis for the decision to reject a treating source opinion. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Jones v. Heckler*, 760 F.2d 993, 997 (9th Cir. 1985)).

The Social Security Regulations "require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). The good reasons "must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 406 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5). Based on fair process

7

considerations, "a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The ALJ stated that he "considered" the opinion of Dr. Collins, but ultimately rejected it because it was "not supported by treatment notes." Tr. at 22. The ALJ gave good reasons for rejecting Dr. Collins's opinion. *See Shelman* , 821 F.2d at 321. First, the ALJ correctly noted that the determination of disability is an issue reserved for the Commissioner—and not for the treating physician. Tr. at 22; *see also* 20 C.F.R. § 404.1527(e)(1) ("[The Commissioner is] responsible for making the determination or decision about whether you meet the statutory definition of disability. . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled.").

Second, the ALJ acknowledged that Dr. Collins had only treated Griffie for a short period at the time of the decision—eight months. Tr. at 22. Dr. Collins admitted that he had only seen Griffie for a "short time" and had very few of Griffie's records from previous doctors. *Id.* at 442.

Third, the ALJ addressed the contradiction in Dr. Collins's own diagnosis. *Id.* at 22. In the same August 07, 2006, letter where he stated that Griffie was disabled due to his diabetes and degenerative joint disease, Dr. Collins stated that Griffie's diabetes was "fairly well controlled on oral medications." *Id.* at 442. Dr. Collins also wrote that Griffie's "pain has also been fairly well controlled on the medications he was on as I have not changed anything since his coming

to see me." *Id.* The ALJ also noted that the residual functional capacity that Dr. Collins assigned to Griffie was "inconsistent with the overall medical evidence of record and the claimant's admitted activities of daily living." *Id.* at 22.

Fourth, the ALJ relied on other objective medical evidence in the record to support his decision. *Id.* Dr. Gilbert, a spine specialist, saw Griffie on December 8, 2004, and stated that his "[r]eflexes were grossly normal" and his "sensation was grossly intact." *Id.* at 22 (citing *id.* at 374). Also, an independent medical examiner, Dr. Henry P. Tutt, saw Griffie and in a January 27, 2005, report stated that he believed Griffie could return to his previous job as a substitute teacher. *Id.* at 22 (citing *id.* at 217). The ALJ noted that Dr. Tutt reviewed a magnetic resonance image scan and did not see anything to "support the claimant's allegation of continuing symptoms." *Id.* at 22. Further, Dr. Robert Johnson saw Griffie for a Worker's Compensation evaluation and on April 18, 2005, stated that Griffie had the physical capability to return to the type of work he performed at the time of his injury. *Id.* at 22 (citing *id.* at 369). Considering all of these factors, the ALJ gave good reasons for rejecting Dr. Collins's opinion.

**2. Consideration of Griffie's Impairments**

Griffie also claims that the ALJ did not consider all of his impairments together to determine their cumulative effect. R. 12 at 3-4. Griffie's claim is without merit. Further, Griffie's motion fails to cite to the record with respect to this argument or alert the Court to the specific impairments that the ALJ allegedly neglected to consider. *See Hollon*, 447 F.3d at 491.

The ALJ stated that Griffie did not have "an impairment or a combination of impairments that meets or medically equals one of the listed impairments" in the Social Security Regulations.

Tr. at 18. While acknowledging that obesity is no longer considered a separate impairment under the Regulations, the ALJ specifically addressed the fact that obesity can affect other impairments. *Id.* at 19. Nevertheless, the ALJ considered Griffie's obesity as a "severe impairment" that caused a limitation of function. *Id.* The ALJ noted that "[a]lthough the claimant is obese and has degenerative disc disease of the lumbar spine, there is no evidence of any musculoskeletal impairment of a severity to meet or equal the requirements of any subsection of Section 1.00 of Appendix 1." Tr. at 19.

"An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Sec'y of Health and Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990). Here, the ALJ discussed each of the impairments individually, *see* Tr. at 17-18, and then specifically referred to a "combination of impairments" in finding that Griffie failed to meet one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, *see id.* at 18. As previously addressed in this opinion, the ALJ specifically discussed the effect of obesity on Griffie's other impairments. *Id*. at 19. By referring to the "combination of impairments," the ALJ fulfilled his obligation to consider the cumulative effect of Griffie's impairments.

Griffie also claims the ALJ did not consider Griffie's pain and the restrictions it caused on his daily activity. R. 12 at 4-5. This claim also fails. The ALJ stated that he must consider the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities." Tr. at 20. The ALJ

noted that Griffie had pain in his lower back. *Id.* at 21. The ALJ also noted that Griffie only took Tylenol for the pain and did not have any prescribed pain medication. *Id.* Ultimately, the ALJ determined based on objective medical evidence that Griffie's statements about the intensity and persistence of his pain were not "entirely credible." *Id.* As the ALJ noted, Dr. Tutt reviewed a magnetic resonance image scan and did not see anything to "support the claimant's allegation of continuing symptoms." *Id.* at 22. Also, the ALJ noted that Dr. Gilbert stated that Griffie's "[r]eflexes were grossly normal" and his "sensation was grossly intact." *Id.* at 22 (citing *id.* at 374). The Court must give deference to the ALJ's determination of Griffie's credibility. *See, e.g., Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987) ("Since the ALJ has the opportunity to observe the demeanor of a witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." (citing *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984))).

Finally, Griffie's claim that *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690 (9th Cir. 1999), calls for a different outcome also fails. *See* R. 12 at 5. In *Gatliff*, the Ninth Circuit held that "[w]here it is established that the claimant can hold a job for only a short period of time, the claimant is not capable of substantial gainful activity." *Id.* at 694. This case is inapposite because the ALJ did not determine that Griffie could hold a job for only a short period of time. Further, Griffie did not introduce any evidence on this point or cite to any part of the record to develop this argument in his motion. *See Hollon*, 447 F.3d at 491.

11

## V. Conclusion

The ALJ gave good reasons for rejecting the opinion of Griffie's treating physician, Dr. Ricky Collins, and also considered the cumulative effect of Griffie's impairments. The ALJ relied on substantial evidence in concluding that Griffie was not disabled. Accordingly, it is hereby **ORDERED** as follows:

(1)   Plaintiff's motion for summary judgment, R. 12, is **DENIED.**

(2)   Defendant's motion for summary judgment, R. 13, is **GRANTED**.

(3)   **JUDGMENT** in favor of the Defendant will be entered contemporaneously herewith.

This the 2nd day of November, 2009.

Signed By:
*Amul R. Thapar* AT
United States District Judge